US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

AUG 22 2012

CHRIS R. JOHNSON, Clerk
By
    Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | No. 5:12CR50053-001 |
| ) | |
| MICHAEL B. COLUMBIA  ) | 18 U.S.C. §§ 1343 and 2(b) |

**INDICTMENT**

The Grand Jury charges:

**A. INTRODUCTION**

At all times pertinent to this indictment:

1.  StoneRock Capital Group, LLC (hereinafter StoneRock) held itself out to be a private commercial real estate lending and investment company specializing in short term non-conforming loans.

2.  StoneRock's office was located in Arizona and Michael B. Columbia was listed as the Chief Executive Officer (CEO), Chairman and Executive Vice President.

3.  Joanna Columbia, wife of Michael Columbia, was listed as both a Board Member and CEO of StoneRock.

4.  Michael and Joanna Columbia were residents of the State of Arizona.

5.  Daniel R. Masters (hereinafter Masters) was a resident of the State of Texas and was President and CEO of Masters Automotive Inc./Masters Holdings (hereinafter Masters Automotive).

6.  Masters Automotive held itself out to be in the business of providing private professional services in the areas of asset management, financial consulting and asset monetization.

7.  Larry C. Nelson (hereinafter Nelson) was a resident of the State of Arkansas and was

the Managing Member of LAN Holdings, LLC.

8.  On or about June 22, 2009, Nelson purchased a $1,000,000,000.00 face value JP Morgan Chase Collateralized Mortgage Obligation (CMO) Bond (hereinafter JP Morgan Chase CMO) bearing CUSIP number 46628FAK7 at a cost of $858,338.90. A CMO is a bond that trades in the public securities markets, and which is backed by a pool of home or commercial mortgages.

### B. MANNER AND MEANS

9.  The JP Morgan Chase CMO was purchased through Ridgeway & Conger, Inc. by Nelson d/b/a LAN Holdings, LLC.

10. On or about June 29, 2010, Masters and Nelson signed an agreement to use a $1,000,000,000.00 face value Credit Suisse CMO owned by Nelson as collateral for a loan. The agreement was amended and added Nelson's JP Morgan Chase CMO as additional collateral.

11. Nelson provided his JP Morgan Chase CMO as collateral and Masters obtained the services of Michael Columbia d\b\a StoneRock as the loan source.

12. In order for Columbia to use Nelson's JP Morgan Chase CMO as collateral for a loan, Nelson assigned the CMO to Columbia on or about August 12, 2010.

13. On or about August 16, 2010, Joanna Columbia opened bank account number xxxxxxxx5885 at Bank of America under the name StoneRock Capital Group, LLC.

14. On or about September 24, 2010, Joanna Columbia opened investment account number xxxx0932 at Wells Fargo Advisors under the name StoneRock Capital Group, LLC. Michael Columbia was an authorized signor on the account.

15. On or about September 30, 2010, Nelson sent an e-mail from Prairie Grove in the

Western District of Arkansas, Fayetteville Division, to a JP Morgan Chase Bank office located in Naples, Florida, directing the JP Morgan Chase CMO CUSIP number 46628FAK7 be transferred to the StoneRock account, account number xxxx0932 at Wells Fargo Advisors, Beverly Hills, California.

16. On or about September 30, 2010, Nelson sent an e-mail to Masters and Michael Columbia advising them he had requested JP Morgan Chase Bank to transfer the JP Morgan Chase CMO to StoneRock's Wells Fargo Advisors account xxxxx0932.

17. On or about September 30, 2010 and October 1, 2010, Michael Columbia sent two e-mails to Nelson. The first e-mail thanked Nelson. The second e-mail asked if Nelson had received "any word from JP Morgan?"

18. On October 1, 2010, Nelson sent an e-mail to Michael Columbia advising him the "bonds" had been shipped and Michael Columbia "should have them today".

19. On October 1, 2010, Nelson's JP Morgan Chase CMO CUSIP number 46628FAK7 was wire transferred from Nelson's JP Morgan Chase account to StoneRock's account number xxxx0932 at Wells Fargo Advisors, Beverly Hills, California.

20. Penson Financial Services, Inc. (hereinafter Penson) and SecondMarket are broker-dealers registered with the Securities and Exchange Commission and are members of the Financial Industry Regulatory Authority.

21. Penson acted as a clearing broker for the purchase, sale, exchange, trade or otherwise dealing in stocks, bonds or options, or any other type of security for SecondMarket.

22. SecondMarket works with companies, buyers, and sellers to create markets for alternative assets such as JP Morgan Chase CMOs.

23. On or about October 6, 2010, a vice president with SecondMarket sent an email to Michael Columbia stating in part "Thanks for your time earlier on the phone. As I mentioned, SecondMarket specializes in distressed and illiquid assets, and we are in touch with many buyers who would be willing to bid on your bond...I can probably get a bid for this bond somewhere in the neighborhood of $400K to 500K."

24. On or about October 7, 2010, Michael Columbia responded to the email stating "My wife and I are interested...we have a few questions. If we were to put the bond up for sale, what would be a time frame on it...lets [sic] say we started today? And what's the process."

25. On or about October 7, 2010, the vice president with SecondMarket informed Michael Columbia via email "The process can move very quickly if you want it to. We can open an account for you here within 24hrs...Once the trade is done there is a 3 day settlement period..."

26. On or about October 12, 2010, Michael Columbia sent an email to the vice president with SecondMarket stating "Let [sic] put the JP Morgan one up for sale...let me know what you get back".

27. On the next day, October 13, 2010, Joanna Columbia and Michael Columbia, representing themselves to be CEO and Executive Vice President respectively of StoneRock, opened trading account, number xxx01704, in the name of StoneRock Capital Group, LLC at Penson.

28. On October 14, 2010, Joanna Columbia directed the JP Morgan Chase CMO CUSIP number 46628FAK7 be transferred from the StoneRock account at Wells Fargo Advisors to the StoneRock account number xxx01704 at Penson.

29. On October 14, 2010, the JP Morgan Chase CMO was transferred to StoneRock account number xxxxx1704 at Penson.

30. From on or about October 18, 2010, Columbia sold the JP Morgan Chase CMO and $417,216.02 was wire transferred from Penson to the StoneRock receivable account number xxxxxxxx5885 at the Bank of America, NA, Tampa, Florida.

31. On October 19, 20, and 21, 2010, Nelson received wire transfers from StoneRock's Bank of America account number xxxxxxxx5885 totaling $250,000.00.

32. Although Nelson's JP Morgan Chase CMO had been sold by Michael Columbia on or about October 18, 2010, Michael Columbia sent an e-mail to Nelson on December 2, 2010 stating in part:

> "I am not here to play games ... the 250k wire came from StoneRock Capital Group, LLC as an advance on a loan to Masters Automotive ... There is a 250k advance out of the loan proceeds from StoneRock Capital Group, LLC at the moment which we have clearly stated if you would like to unwind all this ... please just send Dan Masters a letter which he can forward to me ... and as long as StoneRock capital group (sic) receives the 250k minus any interest payments you would of made is returned ... we will promptly return the bonds."

33. On December 2, 2010, Michael Columbia sent another e-mail to Nelson stating:

> "You have $250K of my money .... that would be 24 months worth of payments..."

34. On December 2, 2010, Michael Columbia and Masters signed an agreement that allowed Michael Columbia, d/b/a StoneRock, to use Nelson's JP Morgan Chase CMO as collateral for a loan.

35. Michael Columbia had Nelson and Masters enter into a Loan Advance Agreement with him (Columbia) in March 2011. Nelson was unaware Michael Columbia had already sold the JP Morgan Chase CMO.

36. As part of the Loan Advance Agreement, Michael Columbia promised to advance $1,000,000.00 to Masters and Nelson in addition to the $250,000.00 that was sent to Nelson from

October 19-21, 2010.

37. Michael Columbia represented he still possessed Nelson's JP Morgan Chase CMO and would return it under certain conditions.

38. In Addendum A to the Loan Advance Agreement dated March 8, 2011, Michael Columbia d\b\a StoneRock agreed to increase the amount of the loan advance he promised to pay Nelson from $1,250,000.00 to $1,350,000.00.

39. On March 21, 2011, Michael Columbia sent Masters the following e-mail:

"My banker called me this morning, and the wire has been confirmed and your funds will be received today."

40. On March 23, 2011 at 3:14 p.m., Masters sent Michael Columbia the following e-mail:

> "...Nothing is showing up on my end yet ... can you send me ... a copy of the wire confirmation, or any document showing/stating the wire transfer occurred, or went out today..."

41. On March 23, 2011 at 4:21 p.m., Michael Columbia sent Masters the following e-mail:

> "Wires have been confirmed and your funds will be received today. If you have any questions feel free to call me."

42. On March 23, 2011 at 5:15 p.m., Subject Re: Response too [sic]: Wire, Michael Columbia sent the following e-mail to Masters:

> "As soon as I get the wire confirmation it will be over ... should be shortly ... I'll keep you posted."

43. On April 19, 2011, Nelson sent the following e-mail to Michael Columbia:

> "I want the immediate return of my JP Morgan CMO (CUSIP #46628FAK7). You

are in breach of your contract dated March 8, 2011, in which you agreed to either forward by wire transfer $1,350,000.00 less the amount of $250,000.00 currently being held in escrow by Jay Starr, attorney, or return the bond."

44. Michael Columbia did not deliver either loan advance of $1,000,000.00 or $1,100,000.00 to Nelson as he had agreed.

45. Michael Columbia did not return Nelson's JP Morgan Chase CMO.

### C. SCHEME TO DEFRAUD

46. Michael Columbia represented that he would use a JP Morgan Chase CMO CUSIP number 46628FAK7 owned by Nelson as collateral for a loan.

47. If a loan was not obtained, the JP Morgan Chase CMO was to be returned to Nelson.

48. The JP Morgan Chase CMO was not to be sold by Michael Columbia.

49. On October 1, 2010, Michael Columbia caused Nelson to have the JP Morgan Chase CMO wire transferred into Columbia's StoneRock account at Wells Fargo Advisors.

50. On October 14, 2010, Joanna Columbia directed the JP Morgan Chase CMO to be transferred from Wells Fargo Advisors to a StoneRock account at Penson.

51. On or about October 18, 2010, Michael Columbia sold the JP Morgan Chase CMO that belonged to Nelson for $417,216.02 for which Nelson had paid $858,332.38 on June 22, 2009.

52. On October 18, 2010, Michael Columbia caused $417,216.02 to be wire transferred from StoneRock's account at Penson into StoneRock's receivable account at Bank of America.

53. The $417,216.02 was transferred from Penson to Bank of America. $250,000.00 was subsequently wire transferred to Nelson. Michael Columbia represented that the money came from his own funds and was an advance on loan proceeds he was going to procure using Nelson's JP

Morgan Chase CMO as collateral.

54. The remaining $167,216.02 went to the benefit of Michael Columbia d\b\a StoneRock.

55. Although the JP Morgan Chase CMO had been sold, Michael Columbia represented he still possessed the JP Morgan Chase CMO and had either obtained a loan or was in the process of obtaining a loan.

56. On December 2, 2010, Michael Columbia promised to return the JP Morgan Chase CMO to Nelson.

57. On March 16, 2011, Michael Columbia represented that he had obtained a loan.

58. On March 21, 2011, Michael Columbia represented to Masters that the funds from the loan were to be wire transferred.

59. On March 23, 2011, Michael Columbia represented to Masters that the funds would be received that day.

60. On March 23, 2011, Michael Columbia represented to Masters that a wire confirmation should be forth coming.

61. In truth and in fact, no loan was obtained, Nelson's JP Morgan Chase CMO was sold and the proceeds were deposited into the StoneRock account at the Bank of America.

## COUNT 1

On or about the 30th day of September 2010, in the Western District of Arkansas, Fayetteville Division, and elsewhere, the defendant, **MICHAEL B. COLUMBIA**, for the purpose of executing the aforesaid scheme and artifice to defraud and to obtain money by means of false and fraudulent

pretenses and representations from Larry C. Nelson, caused Larry C. Nelson to send an e-mail in interstate commerce from Prairie Grove in the Fayetteville Division of the Western District of Arkansas to Naples, Florida, directing JP Morgan Chase to transfer his JP Morgan Chase CMO Bond CUSIP number 46628FAK7 to the StoneRock Capital Group, LLC account at Wells Fargo Advisors, Beverly Hills, California, in violation of Title 18, U.S.C. §§ 1343 and 2(b).

## FORFEITURE ALLEGATION

The Grand Jury re-alleges and incorporates by reference herein Count 1 of this Indictment.

Upon conviction of Count 1 of this Indictment, the defendant **MICHAEL COLUMBIA**, shall forfeit to the United States pursuant to 21 U.S.C. § 853, any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the said violations, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the said violations, including but not limited to the following:

a. A sum of United States currency representing the amount of proceeds obtained by the defendant named herein as a result of the offense described in Count 1 of this Indictment,

b. All real and personal property, derived from, involved in, or used to facilitate the offense described in Count 1 of this Indictment.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) and 18 U.S.C. § 982(b)(1), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

A True Bill.

*/s/ Grand Jury Foreperson*
Foreperson

CONNER ELDRIDGE
UNITED STATES ATTORNEY

By: *Steven N Snyder*
Steven N. Snyder
Assistant U.S. Attorney
Arkansas Bar No. 72101
414 Parker Avenue
Fort Smith, AR 72901
Phone: 479-783-5125
E-mail: steve.snyder@usdoj.gov